Nathan Sweedler, Ref.
On the 29th day of December, 1954, the Public Administrator of the County of Kings, as administrator of the estate of the above-named decedent, filed a petition and an account of his proceedings. In the petition, he alleged that the decedent’s distributees were unknown, and listed the names of 329 persons, who claim to be distributees of the decedent.
*643 Thereafter, the matter came on to be heard before the Honorable MAXiBimrAisr Moss, Surrogate of Kings County. On January 16, 1956, the Surrogate made an order appointing the undersigned, “ As Special Referee to hear, determine and report the same and all questions arising upon the settlement of said account ” and “ the determination of the identities of the distributees of this estate, if any.” The order also provides, ‘ ‘ That the said Referee shall determine the place or places and the time or times and the method of procedure for the taking of any testimony herein and to take all testimony and to make rulings as to its competency, relevancy' and admissibility and to submit his findings of facts, conclusions of law and recommendations to this Court upon the completion of all such testimony.”
The undersigned took his statutory oath and qualified as Referee herein.
It has been the law for many years that a Referee appointed to hear, try and determine, has, over the proceedings referred to him, all of the powers of the court and acts as the Surrogate with respect to the trial of the issues referred to him. (Matter of Niles, 47 Hun 348; Schuyler v. Smith, 51 N. Y. 309; Decker v. Canzoneri, 256 App. Div. 68; Matter of Hogan, N. Y. L. J., Nov. 5, 1934, p. 1651, col. 4.)
The statutory authority for the appointment of a Referee by the Surrogate is found in section 66 of the Surrogate’s Court Act. The provisions governing referees appointed by the Supreme Court are applicable to referees appointed under this section. (Matter of Clark, 119 N. Y. 427; Matter of Walker, 43 Misc. 475; Matter of Dunn, 164 App. Div. 134.)
The practice of referring matters in a long or complicated account began when New York was a colony under the Dutch. Actions involving long accounts could be referred to referees, and such a reference was a very common mode of trial. The purpose of references is to conserve the time of the Surrogate upon the trial of involved questions of fact, which would clog his calendar. (Decker v. Canzoneri, supra; Matter of Luckenbach, 189 Misc. 529, 531, affd. 272 App. Div. 928.)
Manifestly, the Referee herein has the power and the authority to entertain and grant appropriate motions necessary to effect a proper disposition of the matter referred to him.
On January 30, 1956, a preliminary hearing was held before the undersigned, at which attorneys appeared. These attorneys represented but a small number of the claimants.
It should be noted that the claimants named in the Public Administrator’s petition are residents of 40 States in the United *644 States, and of 5 foreign countries. In view of the large number of persons in this proceeding who were cited by the Public Administrator, the undersigned is of the opinion that it is advisable to outline the procedure which will place in issue the status of the claimants.
The distribution of the decedent’s property must be determined pursuant to section 83 of the Decedent Estate Law, the relevant statute of descent and distribution of the State of New York, which governs intestate distribution. The statute of distribution envisages all possible contingencies, and is quoted for the guidance, particularly, of the nonresident claimants in the various States of the Union, and of those residing in foreign countries.
Section 83 of the Decedent Estate Law, as it relates to persons entitled to take or share in the distribution of the estate of a decedent who died without leaving a will, provides as follows:
1. One-third part to the surviving spouse, and the residue in equal portions to the children, and such persons as legally represent the children if any of them have died before the deceased.
2. If the deceased leaves a surviving spouse and both parents surviving, and no child or descendant, the surviving spouse shall take five thousand dollars and one-half of the residue, and the parents shall each take one-half of the balance; if there be no surviving spouse, the parents shall each take one-half of the whole.
3. If the deceased leaves one parent surviving, and no child or descendant, and a surviving spouse, the surviving spouse shall take five thousand dollars and one-half of the residue, and the surviving parent shall take the balance; if there be no surviving spouse, the surviving parent shall take the whole.
4. If the deceased leaves a surviving spouse, and no descendant, parent, brother or sister, nephew or niece, the surviving spouse shall be entitled to the whole thereof; but if there be a brother or sister, nephew or niece, and no descendant or parent, the surviving spouse shall take ten thousand dollars and one-half of the residue, and the balance shall descend and be distributed to the brothers and sisters and their representatives.
5. If there be no surviving spouse, the whole thereof shall descend and be distributed equally to and among the children, and such as legally represent them.
6. If there be no surviving spouse, and no children, and no representatives of a child, and no parent, the whole shall descend and be distributed to the next of kin in equal degrees to the deceased; and if all the brothers and sisters of the intestate be living, the whole shall descend and be distributed to them; if any of them be living and any be dead, per stirpes to the brothers and sisters living, and the descendants in whatever degree of those dead; so that to each living brother or sister shall descend or be distributed such share as would have descended or been distributed to him or her if all the brothers and sisters of the intestate who shall have died leaving issue had been living, and so that there shall be distributed to such descendants in whatever degree, collectively, the share which their parent would have received if living; and the same rule shall prevail as to all direct lineal descendants of every brother and sister of the intestate whenever such descendants are of unequal degrees.
*645 7. If the deceased was illegitimate and leave a mother, and no child, or descendant, and no surviving spouse, such mother shall take the whole and shall be entitled to letters of administration in exclusion of all other persons. If the deceased shall leave a surviving spouse, the surviving spouse shall take five thousand dollars and one-half of the residue, and the mother shall take the balance. If the mother of such deceased be dead, the relatives of the deceased on the part of the mother shall take in the same manner as if the deceased had been legitimate, and be entitled, to letters of administration in the same order.
8. Where the distributees of the deceased, entitled to share in his estate, are all in equal degree to the deceased, their shares shall be equal.
D. When such distributees are of unequal degrees of kindred, the whole shall descend and shall be distributed to those entitled thereto, according to their respective stocks; so that those who take in their own right shall receive equal shares, and those who take by representation shall receive the share to which the parent whom they represent, if living, would have been entitled.
10. No representation shall be admitted among collaterals after brothers and sisters descendants.
11. Relatives of the half-blood shall take equally with those of the whole blood in the same degree; and the representatives of such relatives shall take in the same manner as the representatives of the whole blood.
12. Descendants and other distributees of the deceased, begotten before his death, but born thereafter, shall take in the same manner as if they had been born in the lifetime of the deceased, and had survived him.
13. If a woman die, leaving illegitimate children, or the legitimate descendants of deceased illegitimate children and no lawful issue, such children or descendants inherit her real and personal property as if such children were legitimate.
14. The right of an adopted child to take a share of the estate and the right of succession to the estate of an adopted child shall continue as provided in the domestic relations law.
All persons making claim to the estate of the decedent should file with the counsel to the Public Administrator and with the court, on or before May 14,1956, the following information:
1. The name and address of the claimant and the place and date of birth.
2. The name of the alleged common ancestor of the claimant and the decedent.
3. The numerical degree of relationship of the claimant to the decedent.
4. The chain of ascent from the decedent to the common ancestor and the chain of descent from the common ancestor to the claimant.
5. The dates of the births, marriages and deaths of the persons included in the chain of ascent and descent.
The learned Surrogates, James A. Foley, in Matter of Wendel (143 Misc. 480) and Matter of Wood (162 Misc. 497), and William T. Collins, in Matter of Powers (194 Misc. 979) adopted similar plans of procedure where a great number of persons asserted claims of relationship to the decedent.
*646 The claimants may appear in person or by counsel admitted to practice in this State. (Surrogate’s Ct. Act, §§ 41, 63.)
Any person desiring to appear after May 14,1956, must make formal application, by order to show cause, for that purpose, to the Referee, on notice to the counsel to the Public Administrator.
The hearing on all claims is set for June 11, 1956, 10:00 a.m., room 305, Borough Hall Building, Brooklyn, New York.
The counsel to the Public Administrator is directed to serve a copy of this decision of the Referee, together with a notice of hearing, on each claimant, and on the attorneys who have appeared herein, also on all persons who have been cited by the Public Administrator in this proceeding. Service by mail shall be sufficient.
Proceed accordingly.